**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RUSSO MEADOWLANDS PARK, LLC | CIVIL ACTION NO. 2:15-cv-02085-ES-JAD |
| Plaintiff, | |
| v. | **Civil Action** |
| HENKEL CORPORATION, ET AL. | |
| Defendants | |

---

**BRIEF OF DEFENDANT HENKEL KGaA IN SUPPORT
OF MOTION TO DISMISS, OR IN THE ALTERNATIVE TO COMPEL
ARBITRATION**

---

**GIORDANO, HALLERAN & CIESLA**
A Professional Corporation
125 Half Mile Road, Suite 300
Red Bank, N.J. 07701-6777
(732) 741-3900

Attorneys for Defendant
Henkel AG & Co. KGaA

PAUL H. SCHNEIDER, ESQ.
   Of Counsel

CHRISTOPHER J. MARINO, ESQ.
DAVID J. MILLER, ESQ.
   On the Brief

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.......................................... iii

PRELIMINARY STATEMENT.......................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY...................... 1

LEGAL ARGUMENT................................................. 7

    POINT I

        COURTS LOCATED IN NEW JERSEY CANNOT PROPERLY EXERCISE
        JURISDICTION OVER DEFENDANT HENKEL KGaA................... 7

        A. There is no General Jurisdiction over Henkel
           KGaA..................................................... 9

        B. Henkel KGaA Has Had No Specific, Deliberate
           Contacts With New Jersey That Would Justify The
           Assertion of Specific Jurisdiction Over It By
           This Court............................................... 11

        C. Exercise of *In Personam* Jurisdiction Over Henkel
           KGaA Will Offend the Notions of Fair Play and
           Substantial Justice..................................... 13

    POINT II

        ALTERNATIVELY, THIS COURT SHOULD STAY THE PENDING
        ACTION AND COMPEL PLAINTIFF TO SUBMIT TO ARBITRATION
        IN GERMANY PURSUANT TO 9 U.S.C. §§ 3 AND 206............. 16

        A. The Federal Arbitration Act/CREFAA.................. 17

        B. The Arbitration Agreement is Valid and the
           Dispute Between the Plaintiff and Henkel KGaA is
           Arbitrable.......................................... 20

           i.  The Subject Matter of the Present
               Dispute is Within the Scope of the
               Arbitration Agreement and is Arbitrable.... 20

           ii. The Arbitration Agreement is
                Enforceable................................ 24

POINT III

PLAINTIFF FAILS TO STATE A LEGAL BASIS FOR RELIEF
AGAINST DEFENDANT HENKEL KGaA AND........................ 26

A. Plaintiff's First and Second Counts Against
   Henkel KGaA are Barred by the Operative Statute
   of Limitations....................................... 27

B. Plaintiff Has Failed to Allege Facts Sufficient
   to Establish Claims of Fraud or Negligent
   Misrepresentation.................................... 29

1. Plaintiff Has Failed To Allege Fraudulent
   Misrepresentation on the Part of Henkel KGaA........ 29

2. Plaintiff Has Failed To Allege a Negligent
   Misrepresentation Claim............................. 32

3. Plaintiff's Group Pleading Is Improper Under
   Fed. R. of Civ. P. 9(b)............................. 34

C. Plaintiff's Breach of Contract Claim Should Be
   Dismissed........................................... 36

D. Plaintiff's Common Law is Preempted by NJ DEP
   Authority........................................... 37

CONCLUSION.................................................. 39

**TABLE OF AUTHORITIES**

**Cases**

Ario v. Underwriting Members of Syndicate 53 at Lloyds,
   618 F.3d 277 (3d Cir. 2010) ................................. 17

Asahi Metal Industry Co., Ltd v. Superior Court, 480 U.S.
   102 (1987) ................................................ 14

Avdel Corp. v. Mecure, 58 N.J. 264 (1971) ...................... 7

Banco Popular N. Am. v. Gandi, 184 N.J. 161 (2005) ........... 30

Bayway Refining v. State Util., 333 N.J. Super. 420 (App.
   Div. 2000) ............................................ 11, 12

Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk
   GmbH, 585 F.2d 39 (3d Cir. 1978) ...................... passim

Bell Atl. V. Twombly, 555 U.S. 544 (2007) .................... 27

Biniek v. Exxon Mobil Corp., 358 N.J. Super. 587 (Law
   Div. 2002) ................................................ 37

Blakey v. Cont'l Airlines, 164 N.J. 38, 69 (2000) ............. 14

Bonnieview Homeowners Ass'n, LLC v. Woodmont Builders,
   LLC, 655 F. Supp. 2d 473 (D.N.J. 2009) .................... 33

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) ........... 8

Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141 (3d Cir.
   1992) ...................................................... 7

Century Indem. Co. v. Certain Underwriters at Lloyd's,
   584 F.3d 513 (3d Cir. 2009) .......................... passim

China Minmetals Materials Imp. & Exp. Co., Ltd. v. Chi
   Mei Corp., 334 F.3d 274 (3d Cir. 2003) ................... 17

E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber &
   Resin Intermediates, S.A.S., 269 F.3d 187 (3d Cir.
   2001) ..................................................... 25

Estate of Maglione v. Gulf Oil Corp., No. A-0105-05T2,
   2007 N.J. Super. Unpub. LEXIS 1059, *21 (App. Div. Feb.
   22, 2007) ................................................. 28

First Nat'l State Bank of N.J. v. Carlyle House, Inc.,
    102 N.J. Super. 300 (Chan. Div. 1968), aff'd o.b., 107
    N.J. Super. 389 (App. Div. 1969), certif. denied, 55
    N.J. 316 (1970) ........................................... 37

Gaelick v. Conn. Gen. Life Ins. Co., No. 11-2464, 2011
    U.S. Dist. LEXIS 95254, at *14 (D.N.J. Aug. 25, 2011) ...... 34

Gennari v. Weichert Co. Realtors, 148 N.J. 582 (1997)........ 30

Gherardi v. Board of Education, 53 N.J. Super. 349 (App.
    Div. 1958) ................................................ 37

Green v. Morgan Props., 215 N.J. 431 (2013).................. 32

Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716
    F.3d 764 (3d Cir. 2013) ................................... 16

H. Rosenblum, Inc. v. Adler, 93 N.J. 324 (1983)............. 32

Helicopteros Nationales de Colombia, S.A. v. Hall, 466
    U.S. 408 (1984) ........................................... 10

Henson v. Denckla, 357 U.S. 235 (1958)...................... 12

Howell Township v. Waste Disposal, Inc., 207 N.J. Super.
    80 (App. Div. 1986) ................................... 38, 39

In re Exxon Mobile Corp. Sec. Lit., 387 F. Supp. 2d 407
    (D.N.J. 2005) ............................................. 35

In re Rockefeller Center Properties, Inc. Sec. Lit., 311
    F.3d 198 (3d Cir. 2002) ................................... 35

In re Suprema Specialties, Inc., 438 F.3d 256 (3d Cir.
    2006) ..................................................... 30

Interlotto v. National Lottery Admin., 298 N.J. Super.
    127 (App. Div. 1997) ...................................... 14

International Paper Co. v. Schwabedissen Maschinen &
    Anlagen GMBH, 206 F.3d 411 (4th Cir. 2000) ................ 25

Jacobs v. Walt Disney World, Co., 309 N.J. Super. 443
    (App. Div. 1998) ....................................... 9, 11

Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619 (1981)..... 30

Judson v. Peoples Bank & Trust Co., 25 N.J. 17 (1957)........ 31

Karu v. Feldman, 119 N.J. 135 (1990)......................... 33

Kaufman v. I-Stat Corp., 165 N.J. 94 (2000).............. 31, 33

Lebel v. Everglades Marina, Inc., 115 N.J. 317 (1989)........ 11

Lopez v. Swyer, 62 N.J. 267 (1973).......................... 28

Lum v. Bank of America, 361 F.3d 217 (3d Cir. 2004).......... 35

Metric Invest., Inc. v. Patterson, 98 N.J. Super. 130
    (Law Div. 1967) ....................................... 31

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
    473 U.S. 614 (1985) ................................... 17

Morristown Assocs. v. Grant Oil Co., 432 N.J. Super. 287
    (App. Div. 2013), rev'd on other grounds, 106 A.3d 1176
    (N.J. 2015) ........................................... 28

Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp. 460
    U.S. 1 (1983) ......................................... 17

Naporano Iron & Metal Co. v. American Crane Corp., 79 F.
    Supp. 2d 494 (D.N.J. 1999) ............................ 36

Neitzke v. Williams, 490 U.S. 319 (1989).................... 27

New W. Urban Renewal Co. v. Viacom, Inc., 230 F. Supp. 2d
    568 (D.N.J. 2002) ................................. 28, 29

Player v. Motiva Enters. LLC, 2006 U.S. Dist. LEXIS 2288,
    at *45 (D.N.J. Jan. 20, 2006) ......................... 38

PNY Techs., Inc. v. Samsung Elecs. Co., No. 10-4587/10-
    6803, 2011 U.S. Dist. LEXIS 26784 (D.N.J. Mar. 14,
    2011) ................................................. 21

Reliance Steel Prods. Co. v. Watson, Ess, Marshall &
    Enggas, 675 F.2d 587 (3d Cir. 1982) ................... 10

Rhodia Inc. v. Bayer Cropscience Inc., No. 04-6424, 2007
    U.S. Dist. LEXIS 82582 (D.N.J. Nov. 7 2007) ........... 21

Rolo v. City Investing Co. Liquidating Trust, 155 F.3d
    644 (3d Cir. 1998) .................................... 36

Saporito v. Combustion Eng'g, Inc., 843 F.2d 666 (3d Cir.
    1988), vacated on other grounds, 489 U.S. 1049 (1989) ...... 35

Schuilkill Energy Res., Inc. v. Pa. Power & Light Co.,
    113 F.3d 405 (3d Cir. 1997) ............................... 27

Severinsen v. Widener University, 338 N.J. Super. 42
    (App. Div. 2001) ........................................... 9

Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742
    F.2d 786 (3d Cir. 1984) ............................... 35, 36

Simon v. Cebrack, 53 F.3d 17 (3d Cir. 1995)................... 26

Southern Cross Overseas Agencies, Inc. v. Wah Kwong
    Shipping Group, Ltd., 181 F.3d 410 (3d Cir. 1999) ...... 27, 28

Std. Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440 (3d
    Cir. 2003) ............................................... 19

Sunbelt Corp. v. Noble, Denton & Assocs., 5 F.3d 281 (3d
    Cir. Pa. 1993) ............................................ 7

Superior Air Prod. Co. v. NL Indus., Inc., 216 N.J.
    Super. 46 (App. Div. 1987) ............................... 39

Swiekiwicz v. Sorema N.A., 534 U.S. 506 n. 1 (2002).......... 27

Szczepanik v. Through Transp. Mut. Ins. Ass'n, No. 07-
    3959, 2008 U.S. Dist. LEXIS 40868 (D.N.J. May 21, 2008) .... 21

T&E Indus. v. Safety Light Corp., 123 N.J. 371 (1991)..... 37, 38

Vitzethum v. Dominick & Dominick, No. 94 Civ. 4938, 1996
    U.S. Dist. LEXIS 400, at *27 (S.D.N.Y. Jan. 18, 1996)20, 22, 23, 24

Waste Management v. Admiral Ins. Co., 138 N.J. 106 (1994)8, 9, 11, 12

Wilson v. McCann, No. A-0520-13T1, 2014 N.J. Super.,
    Unpub. LEXIS 2500 (App. Div. Oct. 21, 2014) ........... 31, 33

**Statutes**

9 U.S.C. § 3............................................... 20

9 U.S.C. § 101............................................. 17

9 U.S.C. § 201..................................... 1, 6, 16, 18

9 U.S.C. § 206............................................. 16

N.J.S.A. 2A:14-1........................................... 27

N.J.S.A. 2A:53A-25........................................... 32

**Rules**

Fed. R. Civ. P. 4(e)......................................... 7

Fed. R. Civ. P. 9(b)................................. 34, 35, 36

Fed. R. Civ. P. 12(b)(2)................................... 1, 39

Fed. R. Civ. P. 12(b)(6)............................... 1, 26, 40

R. 4:4-4(b)(1).............................................. 7

Rule 12(b)(6).......................................... 16, 35

**Other Authorities**

*New York Convention Countries*, NEW YORK ARBITRATION CONVENTION,
   http://www.newyorkconvention.org/contracting-
   states/list-of-contracting-states (last visited Mar.
   19, 2015) ...........................................18, 19

## PRELIMINARY STATEMENT

Plaintiff Russo Meadowlands Park, LLC ("Plaintiff") has improperly attempted to hail into the courts of New Jersey Defendant Henkel AG & Co. KGaA ("Henkel KGaA"), a German entity with no business locations or operations in this State. Further, all of Plaintiff's claims arise out of alleged obligations under and relationships established by a written agreement which incorporates an arbitration agreement requiring arbitration of this dispute in Germany.

In light of this, the courts of New Jersey do not have *in personam* jurisdiction over Henkel KGaA and Plaintiff's First Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2), or alternatively stayed, compelling Plaintiff to submit this matter to arbitration in Germany pursuant to 9 U.S.C. § 201, *et seq.*

Moreover, Plaintiff's claims are in part time-barred, and Plaintiff has otherwise failed to state any claim upon which relief can be granted. Accordingly, each of Plaintiff's causes of action is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6) as well.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### The Parties

Defendant Henkel KGaA is a partnership limited by shares incorporated under German Law, with its principal place of

- 1 -

business in Düsseldorf, Germany. <u>See</u> FAC, ¶7. Henkel KGaA owns Henkel of America I, LLC, which owns Henkel of America, Inc. ("HOA"), which in turn owns Henkel Corporation ("Henkel Corp."). <u>See</u> Certification of Sven Reissig ("Reissig Cert."), ¶3; FAC, ¶8.

Defendant Henkel Corp. is a Delaware Corporation with its principal place of business located in Rocky Hill, Connecticut. <u>See</u> FAC, ¶11.

Cognis Corporation is a Delaware corporation formerly located in Cincinnati, Ohio, that originally acquired the Property from Henkel Corp. by Deed dated December 29, 1999. <u>See</u> FAC, ¶12.

Plaintiff Russo Meadowlands Park, LLC ("Plaintiff") is the successor by merger to 243 Veterans Boulevard, LLC and Meadowlands Park, LLC, and is the present owner of the Property, which it purchased from Cognis on October 27, 2006. <u>See</u> FAC, ¶¶5-6.

**<u>Background</u>**

This action involves an on-going remediation of certain property located in Carlstadt, New Jersey (the "Property") under the oversight of the New Jersey Department of Environmental Protection ("DEP"). <u>See</u> FAC, ¶6. On August 29, 1986, DEP entered an Administrative Consent Order ("ACO") with Diamond Shamrock Chemicals Company providing for DEP to oversee

remediation of the Property and permitting Diamond Shamrock to sell the Property to Henkel Process Chemical Inc., which subsequently merged into Henkel Corporation. See FAC, ¶¶1, 13.

**The Notarial Deed/Share Purchase Agreement**

Plaintiff's claims against Henkel KGaA arise out of its claim of rights as successor to Cognis pursuant to a September 12, 2001 Share Purchase Agreement executed by means of a Notarial Deed ("Share Purchase Agreement" or "Notarial Deed") in connection with a corporate spinoff transaction whereby Henkel KGaA spun off its specialty chemical manufacturing business throughout the world to several international entities. Specifically, Plaintiff asserts claims for breach of contract obligations and fraudulent and negligent misrepresentations arising under the Notarial Deed, which contains a mandatory and enforceable arbitration clause. See Marino Cert. at Ex. A; FAC, ¶2. All of Plaintiff's claims are dependent upon the interpretation of this agreement and are therefore arbitrable.

Under the Notarial Deed, Henkel KGaA assumed certain contractual indemnification obligations regarding "Safety, Health and Environmental Matters," including indemnification of Cognis Corporation with respect to certain losses that may arise as a result of contamination on the Property or the release of hazardous substances at the Property. See id. Plaintiff alleges that it has succeeded to Cognis Corporation's indemnification

rights under the Notarial Deed, and that Henkel KGaA is in breach. See FAC, ¶¶6, 56-59.

In an exhibit to the Notarial Deed, Henkel KGaA provided a list of disclosed items with respect to issues on the Property. See FAC, ¶17. That exhibit contained the following disclosure relating to the Property: "Soil and Groundwater Contamination. On site soil remediation completed." See id. Plaintiff claims this exhibit is inaccurate, which gives rise to its fraudulent and negligent misrepresentation claims against Henkel KGaA.

**The Arbitration Agreement**

The Notarial Deed also includes choice of law and forum selection clauses to guide the resolution of disputes that may arise as a result of the Deed. Specifically, Section 15.12 reads, in relevant part:

> If an attempt for a settlement has failed, the differences or disputes, including those regarding the validity of the Agreement, shall be finally settle under exclusion of any state court's competence in accordance with the Arbitration Agreement attached as Exhibit 15.12, which the Parties hereby enter into. [See Marino Cert. at Ex. A.]

The arbitration agreement made an exhibit to and incorporated by reference into the Notarial Deed (the "Arbitration Agreement"), states: "All disputes arising out of, or in connection with the Share Purchase Agreement, including disputes concerning its validity, shall be decided under

- 4 -

exclusion of any state court's competence by the arbitral tribunal." See Marino Cert. at Ex. B. The Arbitration Agreement provides further that: "The arbitral tribunal shall also decide disputes regarding the validity of this Arbitration Agreement." See id.

**Plaintiff's Purchase of the Property**

On or about May 13, 2004, Plaintiff entered into a Contract of Sale with Cognis Corporation to purchase the Property (the "Sale Agreement"). See FAC, ¶18. Henkel KGaA was not a party to this Agreement. See id. Prior to closing, Plaintiff insisted that Cognis Corporation provide Plaintiff with relevant portions of the Notarial Deed, which included the exhibit containing soil remediation status representations. See FAC, ¶¶19, 22. Plaintiff claims that it relied on the soil remediation progress representation in the Notarial Deed in closing on the title to the Property on October 27, 2006. See FAC, ¶24.

In April of 2008, Plaintiff alleges that it received from Cognis Corporation a copy of a letter dated April 8, 2008 to the DEP which disclosed that the DEP required some limited, additional soil remediation on the Property. See FAC, ¶26. Plaintiff claims that this was the first time it learned that soil remediation was not fully completed at the main parcel of the Property. See id.

**<u>Plaintiff's Claims Against Henkel KGaA</u>**

Plaintiff is dissatisfied with the scope and pace of the ongoing remediation, which it claims has frustrated its plan to redevelop the Property.  <u>See</u> FAC, ¶¶23-46.  This lead Plaintiff to file an action in the Superior Court of New Jersey asserting, with respect to Henkel KGaA, claims for fraudulent and negligent misrepresentation, breach of contract, and breach of common law obligations arising from "abnormally dangerous activities." <u>See</u>, <u>generally</u>, FAC. Improperly coupling two separate entities, Henkel Corp. and Henkel KGaA, as one in the same without alleging any facts supporting such a conclusion, Plaintiff claims that both entities are in breach of their contractual obligations; the only agreement to which Henkel KGaA is a party is the Notarial Deed.

On March 24, 2015, Henkel KGaA removed the action to this Court pursuant to the provisions of the Federal Arbitration Act, 9 <u>U.S.C.</u> § 201, *et seq.*, Henkel KGaA now moves before the Court (1) for an order dismissing Plaintiff's First Amended Complaint for lack of *in personam* jurisdiction; (2) alternatively for an order staying this action and compelling arbitration in accordance with the terms of the Arbitration Agreement; or (3) alternatively for dismissal for failure to state a claim upon which relief can be granted.

## **LEGAL ARGUMENT**

### **POINT I**

**COURTS LOCATED IN NEW JERSEY CANNOT PROPERLY EXERCISE JURISDICTION OVER DEFENDANT HENKEL KGaA**

Henkel KGaA, a German entity with no offices, operations or contacts with the state of New Jersey, is not subject to *in personam* jurisdiction within this state, and this action therefore must be dismissed. "[O]nce the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992).

Pursuant to Fed. R. Civ. P. 4(e), "district courts have personal jurisdiction over nonresident defendants to the extent authorized under the law of the forum state in which the district court sits." Sunbelt Corp. v. Noble, Denton & Assocs., 5 F.3d 28, 31 (3d Cir. 1993). It is well-settled that New Jersey courts may exercise personal jurisdiction over nonresident defendants only to extent permitted by the due process clause of the Fourteenth Amendment of the United States Constitution. Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971); R. 4:4-4(b)(1).

Due process "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or

- 7 -

relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-
72 (1985). Only where a defendant has purposefully engaged in
activities in the forum state, not resulting from another's
unilateral activities or some other fortuitous or random
contact, will the foreign defendant be subjected to jurisdiction
in the forum, the so-called minimum-contacts test. Id. at 475.

    Indeed, the minimum-contacts test calls for a case-by-case
analysis of a defendant's relationship with the forum state.
Waste Management v. Admiral Ins. Co., 138 N.J. 106, 122 (1994).
Courts engage in a two-part analysis to determine whether
jurisdiction is appropriate. First, as a threshold issue, the
court must determine whether minimum contacts exist at all. Id.
at 123. Specifically, the court must determine whether it has
"specific" or "general" jurisdiction. Id. at 119. Second, if the
court finds sufficient minimum contacts to exercise
jurisdiction, the court must determine "whether those minimum
contacts establish jurisdiction consistent with considerations
of fair play and substantial justice," which depends upon the
"relationship among the defendant, the forum, and the
litigation." Id. at 121-23.

    As the Plaintiff has failed to allege any facts that
demonstrate how this Court has personal jurisdiction over Henkel
KGaA, it cannot meet the threshold inquiry of minimum contacts.
Henkel KGaA neither availed itself of the privilege of

conducting activities in New Jersey, nor had the required systematic and continuous contacts with the State to be subject to the general jurisdiction of this Court. Plaintiff will be unable meet its burden of establishing that Henkel KGaA has any contacts with New Jersey, let alone the sufficient minimum contacts necessary to justify *in personam* jurisdiction.

## A.   <u>There is no General Jurisdiction over Henkel KGaA</u>

Plaintiff has alleged no facts that remotely suggest this Court has general jurisdiction over Henkel KGaA. This German entity transacts no business in, has no connections with, and maintains no presence within the state of New Jersey. This Court therefore lacks general jurisdiction over Henkel KGaA.

General jurisdiction arises when a defendant's presence in the state is unrelated to the subject matter of the lawsuit at issue. <u>Jacobs v. Walt Disney World, Co.</u>, 309 N.J. Super. 443, 452 (App. Div. 1998). It is the defendant's "continuous and substantial" or "continuous and systematic" contacts with the forum that give rise to general jurisdiction. <u>Id.</u>; <u>Waste Management, Inc. v. Admiral Ins. Co.</u>, 138 N.J. 106, 124 (1994). With only isolated, random and attenuated contacts, general jurisdiction will not lie. <u>Severinsen v. Widener University</u>, 338 N.J. Super. 42, 47 (App. Div. 2001). The contacts required to establish general jurisdiction must be "*extensive and pervasive.*" <u>Reliance Steel Prods. Co. v. Watson, Ess, Marshall &</u>

Enggas, 675 F.2d 587, 589 (3d Cir. 1982). Without continuous and systematic contacts, general jurisdiction over a nonresident defendant cannot be maintained. Helicopteros Nationales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).

Clearly general jurisdiction fails as to Henkel KGaA. Henkel KGaA is a German "Kommanditgesellschaft auf Aktien", *i.e.,* a partnership limited by shares, organized under the laws of Germany in 1876, and with its headquarters and principal place of business in Düsseldorf, Nordrhein-Westfalen, Germany. See Reissig Cert., ¶2. It does not now, and never did conduct any business or have any business locations in New Jersey. See id. at ¶¶5-7. Moreover, Henkel KGaA is neither licensed nor qualified to do business in the State of New Jersey. See id. at ¶5. Plaintiff's First Amended Complaint is devoid of any allegations otherwise, and certainly does not claim Henkel KGaA has systematic and pervasive contacts with New Jersey.

To the extent Plaintiff is attempting to point to Henkel KGaA's participation in and signing of the Notarial Deed as a contact to New Jersey, this position is wholly misplaced. As Plaintiff admits, there were no New Jersey entities that were parties to the Notarial Deed, in which Henkel KGaA provided certain foreign parties with indemnification. See FAC, ¶15. This Notarial Deed was not negotiated, entered into, or capable of being performed in New Jersey.

- 10 -

In fact, the only contact that Henkel KGaA has had with the State of New Jersey is this improper lawsuit, which is far from the systematic and continuous contacts with New Jersey that would subject it to general *in personam* jurisdiction.

**B.    Henkel KGaA Has Had No Specific, Deliberate Contacts With New Jersey That Would Justify The Assertion of Specific Jurisdiction Over It By This Court.**

Specific personal jurisdiction arises from a defendant's contacts with the State that are related to the claims in a plaintiff's suit. In a specific jurisdiction analysis, the minimum contacts inquiry focuses on the relationship among the defendant, the forum and the litigation. Jacobs, supra, 309 N.J. Super. at 453; Bayway Refining v. State Util., 333 N.J. Super. 420, 429 (App. Div. 2000) (citing Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323 (1989)). It is the purposeful acts by the defendant that are directed toward a state that make it reasonable and proper for a state to assert jurisdiction.

"[T]he existence of minimum contacts [in a specific jurisdiction analysis] turns on the presence or absence of intentional acts of the defendant to avail itself of some benefit of a forum state." Waste Management, 138 N.J. at 126. Jurisdiction can arise from an intentional act creating an "*actionable event*" in a forum, the voluntary use of certain "*procedures*" of a state, the making of a contract that has substantial connections to a state, and consenting to an

arbitration clause. Id. at 126-127 (emphasis added).   Very minimal contacts, communications or correspondence will be insufficient. In short, what will constitute minimum contacts with a state varies with the "quality and nature of defendant's activity." Henson v. Denckla, 357 U.S. 235, 253 (1958).

Here, Plaintiff can point only to Henkel KGaA's negotiation and execution of the Notarial Deed as a purported basis for specific jurisdiction. Not only is Plaintiff not a party to that contract, but the contract does not in any way touch New Jersey. Moreover, as the court in Bayway explained:

> The existence of a contractual relationship alone is not enough to sustain jurisdiction unless the foreign corporation entering into that relationship can reasonably have contemplated "significant activities or effects" in the forum state. While a contract "will not automatically establish sufficient minimum contacts with the forum state, it will be examined in the context of the overall business transactions related to and surrounding the [agreement] and the parties' relationship."

Bayway, 333 N.J. Super. at 431-32 (internal citations omitted).

Here, Plaintiff and Henkel KGaA have *no relationship at all*. The only contract alleged to which Henkel KGaA was a party, the Notarial Deed, simply provides for indemnification to other foreign non-parties. It was neither entered into in New Jersey nor between New Jersey parties, and Henkel KGaA was not required to perform any obligations in New Jersey. It is inconceivable that Henkel KGaA could have reasonably contemplated any

activities or effects directed at New Jersey based on this contract, let alone Plaintiff, which was not even in existence at the time Henkel KGaA entered into the Notarial Deed.

Similarly, Plaintiff's attempt to rely on its fraud cause of action to demonstrate that there was some intentional act creating an actionable event within New Jersey is also improper. Plaintiff has failed to identify or otherwise demonstrate how allegedly fraudulent statements made in a confidential agreement to foreign entities other than Plaintiff would demonstrate that Henkel KGaA somehow directed this alleged fraudulent activity at New Jersey. It simply defies logic and should be rejected. As discussed more fully below, Plaintiff's vague "group pleading" allegations, *i.e.*, lumping all defendants in allegations of fraudulent conduct, is improper as a matter of law and therefore does not change the analysis. There is simply no basis for this Court to assert personal jurisdiction over Henkel KGaA, and Plaintiff's First Amended Complaint should be dismissed.

C. **Exercise of *In Personam* Jurisdiction Over Henkel KGaA Will Offend the Notions of Fair Play and Substantial Justice.**

Finally, the assertion of *in personam* jurisdiction here over Henkel KGaA will offend traditional notions of fair play and substantial justice. What has been described by the New Jersey Supreme Court as the "flip-side of the purposeful availment" doctrine is the consideration of notions of fair play

and substantial justice as they pertain to the assertion of jurisdiction in a particular case. Blakey v. Cont'l Airlines, 164 N.J. 38, 69 (2000). When, as in this case, such concepts are offended and undermined, the court should not assert jurisdiction.

In Asahi Metal Industry Co., Ltd v. Superior Court, 480 U.S. 102 (1987), the Supreme Court identified a number of factors that are to be considered when evaluating the "*fairness*" of asserting jurisdiction. These fairness factors include the following: the burden on defendant; the interests of the forum state; the plaintiff's interest in obtaining relief; the interstate judicial system's interest in efficient resolution of disputes; and the shared interest of the states in furthering fundamental substantive social policies. Id.

It is clear that if a party's contacts with a forum are limited or virtually non-existent, as are those of Henkel KGaA, the weight of the second prong of the jurisdiction test is greater. See, e.g., Interlotto v. National Lottery Admin., 298 N.J. Super. 127, 136-137 (App. Div. 1997). Here, exercise of jurisdiction over Henkel KGaA would exceed the outermost limits of personal jurisdiction. Henkel KGaA did not purposefully directly any of its activities to New Jersey, nor did it have any reasonable belief that its transaction with another foreign entity would have any direct consequences in New Jersey. The

fact that a much later alleged successor in interest to the Notarial Deed would have some tie to or be located in New Jersey does not demonstrate any purposeful direction of activity into the state.

In light of this, it would be manifestly unfair to subject Henkel KGaA to personal jurisdiction in this state. Henkel KGaA is a German entity with no ties to or operations in New Jersey. It would be unduly burdensome to subject it to litigation in New Jersey when all of its witnesses, employees, officers and operations are outside of the state. Moreover, New Jersey lacks any real interest in the purely alleged commercial relationship between Henkel KGaA and Plaintiff in this action. While the Notarial Deed relates to the Property, it does not affect it. It simply sets up certain financial obligations between non-New Jersey entities. Indeed, Plaintiff's interest in obtaining relief does not outweigh these factors. Plaintiff is fully capable of bringing this action in the appropriate forum, which as set forth below is arbitration in Germany. Plaintiff chose not to do so. It is therefore wholly inappropriate for this Court to exercise jurisdiction over Henkel KGaA. To hold otherwise would be a vast miscarriage of justice and would offend notions of fair play. It is respectfully submitted that the First Amended Complaint against Henkel KGaA therefore should be dismissed for lack of personal jurisdiction.

## POINT II

### ALTERNATIVELY, THIS COURT SHOULD STAY THE PENDING ACTION AND COMPEL PLAINTIFF TO SUBMIT TO ARBITRATION IN GERMANY PURSUANT TO 9 U.S.C. §§ 3 AND 206

Even if Henkel KGaA were subject to personal jurisdiction in New Jersey, there is no court in New Jersey that would be the proper forum for this action in light of the binding Arbitration Agreement. Pursuant to sections 3 and 206 of the Federal Arbitration Act ("FAA"), the Court should stay this action and compel Plaintiff to submit this matter to arbitration in Düsseldorf, Germany.

On a motion to compel arbitration pursuant to 3 U.S.C. §§ 9 and 206, if the parties do not dispute the existence of an agreement, but contest the legal effect of the agreement's language, the case involves a question of contract construction and requires a legal determination. Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 530 (3d Cir. 2009). Thus, where a court can conclude, based on the complaint and any documents referenced in the complaint, that claims are subject to an enforceable arbitration agreement, a motion to compel arbitration should be considered under the standard applied to a Rule 12(b)(6) motion without the need for discovery. Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 776 (3d Cir. 2013).

- 16 -

A. **The Federal Arbitration Act/CREFAA**

The FAA, 9 U.S.C. § 101, *et seq.*, embodies a "strong federal policy" in favor of compelling arbitration over litigation. See China Minmetals Materials Imp. & Exp. Co., Ltd. v. Chi Mei Corp., 334 F.3d 274, 281 (3d Cir. 2003).

The FAA places arbitration agreements on the same footing as other contracts, putting an end to judicial reluctance to enforce agreements to arbitrate. Century Indem., 584 F.3d at 522. This strong federal policy carries "special force" where, as here, international commerce is involved. China Minmetals, 334 F.3d at 281. (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985)). The policy is so strong that a court faced with uncertainty regarding the scope of arbitral issues under an arbitration agreement, whether the problem is a defense to arbitration or the construction of the language of the agreement itself, will favor arbitration. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp. 460 U.S. 1, 24-25 (1983).

Moreover, parties may not opt-out of the FAA's requirements, including by way of agreement to be governed by a state arbitration statute instead of the FAA. See Ario v. Underwriting Members of Syndicate 53 at Lloyds, 618 F.3d 277, 288 (3d Cir. 2010).

Importantly, the FAA requires the enforcement of arbitration agreements between United States citizens and foreign citizens. Specifically, the FAA, in part, codifies the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958[1] (the "Convention" or "CREFAA") into the statute. 9 U.S.C. § 201. The relevant portions of the Convention, as incorporated into the FAA, provide as follows:

> Each Contracting State **shall recognize** an agreement in writing under which the parties undertake to submit to arbitration all or any differenced which may arise between them...
>
> The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, **shall**, at the request of one of the parties, **refer the parties to arbitration**, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.
>
> [Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Jun. 10, 1958, 21 UST 2517 (emphasis added).]

Where, as here, a dispute arises from an international commercial agreement, a court must analyze the following four factors to determine whether the arbitration agreement falls under CREFAA:

> (1)   whether an agreement in writing to arbitrate the subject of the dispute exists;

---

[1] Germany ratified the Convention on June 30, 1961. *New York Convention Countries*, NEW YORK ARBITRATION CONVENTION, http://www.newyorkconvention.org/contracting-states/list-of-contracting-states (last visited Mar. 19, 2015).

(2)   whether the agreement provides for arbitration in the territory of a signatory of the Convention;

(3)   whether the agreement arise out of a legal relationship which is considered as commercial;

(4)   whether a party to the agreement is not an American citizen, or whether the commercial relationship has some reasonable relation with one or more foreign states.

Std. Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 449 (3d Cir. 2003). If a court determines that these four requirements are met, it must order arbitration absent a finding that the agreement is null and void. Id. (emphasis added).

Here, the second, third and fourth factors clearly cannot be disputed. The Arbitration Agreement calls for arbitration in Germany, a signatory to the Convention, (see Marino Cert. at Ex. B, ¶3.1; New York Convention Countries, supra note 1); the Arbitration Agreement plainly arises out of the legal relationship created by the Notarial Deed and that relationship is commercial as it involves the sale of business assets (see Marino Cert. at Ex. A); and Henkel KGaA is a citizen of Germany and not of the United States (see FAC, ¶7).

With respect to the first factor, Plaintiff admits the existence of an agreement – the Notarial Deed. The Arbitration Agreement is incorporated by reference and made an exhibit to the Notarial Deed and is thereby referenced in the Complaint. See, e.g., FAC, ¶15. Thus, reference to the Arbitration Agreement herein does not constitute reference to anything

- 19 -

beyond the pleadings. <u>See</u> FAC, ¶¶15-17, 55-59. Moreover, as set forth in more detail below, each of Plaintiff's claims falls squarely within the scope of the Arbitration Agreement incorporated into the Notarial Deed.

**B. <u>The Arbitration Agreement is Valid and the Dispute Between the Plaintiff and Henkel KGaA is Arbitrable</u>**

Here, there can be no dispute that the Arbitration Agreement falls under the Convention and therefore this Court must compel the same.

In order to compel arbitration, the Court must first "determine that (1) there is an agreement to arbitrate and (2) that the dispute at issue falls within the scope of that agreement." <u>Century Indem.</u>, 584 F.3d at 523.

> **i. The Subject Matter of the Present Dispute is Within the Scope of the Arbitration Agreement and is Arbitrable**

The central issue before a federal court on a motion to compel arbitration pursuant to the FAA and the Convention is whether the subject dispute is arbitrable under an agreement to arbitrate. <u>Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH</u>, 585 F.2d 39, 44 (3d Cir. 1978); <u>Vitzethum v. Dominick & Dominick</u>, No. 94 Civ. 4938, 1996 U.S. Dist. LEXIS 400, at *27 (S.D.N.Y. Jan. 18, 1996) (quoting 9 <u>U.S.C.</u> § 3) ("The Court's role at this time is limited to deciding the threshold issue of the arbitrability of [the claims], that is, whether the issue

involved in [this] suit or proceeding is referable to arbitration under [the arbitration] agreement.") (internal quotation marks omitted).

In connection with contracts involving commerce such as the Notarial Deed, "the question of whether … there is an agreement to arbitrate an issue or dispute upon which suit has been brought is governed by federal law." Becker Autoradio, 585 F.2d at 43. Indeed, federal courts unequivocally compel arbitration when faced with claims that are subject to an arbitration agreement subject to the Convention. See, e.g., PNY Techs., Inc. v. Samsung Elecs. Co., No. 10-4587/10-6803, 2011 U.S. Dist. LEXIS 26784 (D.N.J. Mar. 14, 2011) (granting motion to compel arbitration pursuant to arbitration agreement falling under the Convention); Szczepanik v. Through Transp. Mut. Ins. Ass'n, No. 07-3959, 2008 U.S. Dist. LEXIS 40868 (D.N.J. May 21, 2008) (same); Rhodia Inc. v. Bayer Cropscience Inc., No. 04-6424, 2007 U.S. Dist. LEXIS 82582 (D.N.J. Nov. 7 2007) (same).

Further, a dispute that does not concern the substantive terms of the contract may nonetheless be found to arise out of a contract subject to an arbitration agreement – and thus be arbitrable. Becker Autoradio, 585 F.2d at 45. In Becker Autoradio, a distributor of car radios brought action against a manufacturer after negotiations to extend an agreement between the parties failed, claiming that a representative of the

manufacturer made an oral promise to renew the contract. Id. at
41. Even though there was no obligation in the agreement
regarding an extension, the Third Circuit nonetheless held that
the dispute clearly *arose out of* the agreement. Id. at 45-47.

Moreover, when an arbitration agreement calls for the
application of the law of another nation, the courts analysis is
limited to whether the claims are arbitrable under United States
law and the particulars of the law of the chosen nation should
not be considered. Vitzethum, 1996 U.S. Dist. LEXIS at *28-29
(citing Becker Autoradio, 587 F.2d at 43)(refusing to "ponder"
the intricacies of German law in connection with an arbitration
agreement and compelling arbitration where the issue was deemed
arbitrable by the terms of the agreement).

Here, the disputes concern both the alleged
misrepresentations made in the language of the Notarial Deed and
various rights and relationships allegedly created by the Deed.
Given that the Arbitration Agreement, by its terms, applies to
all disputes arising out of or in connection with the Notarial
Deed, including disputes about the validity of the Agreement,
all of Plaintiff's claims against Henkel KGaA fall within the
scope of the Agreement. Specifically, Plaintiff claims that
Henkel KGaA made representations concerning the environmental
condition of the Property which induced Plaintiff to purchase
the Property. These appear *in the document incorporating the*

*Arbitration Agreement*—the Notarial Deed. Plaintiff's claims against Henkel KGaA are a direct result of the Notarial Deed and would not exist but for Henkel KGaA's alleged representations therein. Indeed, the entire alleged relationship between Plaintiff and Henkel KGaA (to the extent there is one at all) derives solely from the Notarial Deed.

The inclusive terms used in the arbitration agreements under which the claims were found to be arbitrable in <u>Becker Autoradio</u> and <u>Vitzethum</u> are remarkably similar to the language in the agreement that is the subject of this motion. Specifically, the operative arbitration clauses of the various agreements provide as follows:

- "The Arbitration Court domiciled in Karlsruhe (Federal Republic of Germany) shall have sole jurisdiction with regard to **all** disputes **arising out of and about** this agreement." <u>Becker Autoradio</u>, 585 F.2d 42 (emphasis added).

- "**All** future legal actions, which might **arise** between the parties **about or out of or in connection with** the agreement…will be decided by the arbitration tribunal agreed to in this agreement to the exclusion of ordinary courts." <u>Vitzethum</u>, 1996 U.S. Dist. LEXIS at *13 (emphasis added).

- "**All** disputes **arising out of, or in connection with** the [Notarial Deed], including disputes concerning its validity, shall be decided under exclusion of any state court's competence by the arbitral tribunal." (<u>See</u> Marino Cert. at Ex B.)(emphasis added).

The arbitration agreements which were enforced in the prior matters included all-encompassing language virtually identical

to the language of the arbitration at issue in the present matter. As a result, like the issues before the court in Becker Autoradio and Vitzethum, the present dispute between Plaintiff and Henkel KGaA is arbitrable under the Arbitration Agreement and must be submitted to arbitration according to the terms of the Arbitration Agreement.

Given the broad language of the arbitration agreement and the fact that Plaintiff's claims involve the language of the Notarial Deed itself, Henkel KGaA respectfully submits that the claims in this matter are arbitrable under the Arbitration Agreement.

### ii.   The Arbitration Agreement is Enforceable

Plaintiff admits the validity of the Notarial Deed and claims to be a successor-in-interest to Cognis thereunder. Regardless of the validity of Plaintiff's successor-in-interest claim, Plaintiff cannot escape the enforceability of the Arbitration Agreement, which was incorporated by reference into the Notarial Deed.

Once a court finds a valid agreement to arbitrate to which parties have agreed, the court must compel arbitration. Century Indem., 584 F.3d at 523-24. As noted above, in determining whether parties have agreed to arbitrate, "questions of interpretation and construction of such arbitration agreements are...to be determined by reference to federal law." Becker

Autoradio, 585 F.2d at 43. Importantly, an arbitration agreement incorporated by reference into another agreement between parties is enforceable. Century Indem., 584 F.3d at 566.

Here, the Arbitration Agreement is validly incorporated by reference into the Notarial Deed. Specifically, section 15.12 of the Notarial Deed states that any "differences or disputes, including those regarding the validity of this agreement, shall be finally settled under exclusion of any state court's competence in accordance with the Arbitration Agreement, attached hereto as Exhibit 15.12, *which the parties hereby enter into*." (See Marino Cert. at Ex. A; emphasis added). There is only one rational reading of section 15.12: that the parties to the Notarial Deed agreed to arbitrate all disputes arising out of that agreement.

Plaintiff, as the alleged successor to Cognis under the Notarial Deed, is subject to this unambiguous language and the requirement to arbitrate. As an alleged successor-in-interest to Cognis under the Notarial Deed, it cannot attempt to enforce the benefits of the contract without also adhering to the corresponding burdens, e.g., an arbitration agreement. E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 200 (3d Cir. 2001)(quoting International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000))("To allow [a plaintiff]

to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the [FAA]").

Henkel KGaA does not admit – and reserves its right to dispute – that Plaintiff has any rights under the Notarial Deed. That dispute also arises out of the Arbitration Agreement and should not be resolved by this Court, but should be sent to arbitration along with the remainder of the disputes at issue.

In sum, under the Notarial Deed there is a valid agreement to arbitrate and the scope of that agreement clearly includes the disputes in the present matter. The Court should enter an order staying this litigation and submitting the matter to arbitration pursuant to the terms of the Arbitration Agreement.

### POINT III

### PLAINTIFF FAILS TO STATE A LEGAL BASIS FOR RELIEF AGAINST DEFENDANT HENKEL KGaA

Even assuming that this Court has jurisdiction over Henkel KGaA and that Plaintiff's claims against Henkel KGaA were not arbitrable, they nonetheless should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

This court is required to analyze "whether under any reasonable reading of the pleadings, plaintiff may be entitled to relief." Simon v. Cebrack, 53 F.3d 17, 19 (3d Cir. 1995). Under the rule, "[f]actual allegations must be enough to raise a

- 26 -

right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. V. Twombly, 555 U.S. 544, 555 (2007). While courts must accept as true all of the factual allegations contained in the complaint (Swiekiwicz v. Sorema N.A., 534 U.S. 506, 508, n. 1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989)), it should not credit a complaint's "bald assertions" or mere "legal conclusions" (Schuilkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997)). As set forth in more detail below, Plaintiff has failed to state a cause of action against Defendant Henkel KGaA.

### A. **Plaintiff's First and Second Counts Against Henkel KGaA are Barred by the Operative Statute of Limitations**

Plaintiff's two alleged claims based on alleged misrepresentations regarding the status of soil remediation at the Property are barred by the applicable six-year statute of limitations.

Under New Jersey law, plaintiffs are required to bring any claim sounding in fraud or negligent misrepresentation within six years of accrual of the cause of action. N.J.S.A. 2A:14-1. Accrual occurs when "a plaintiff knows or should know of [the cause of action's] existence." Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 425 (3d Cir. 1999). This "discovery rule" delays the accrual of a cause

of action until the injured party knows, or, with the exercise of reasonable diligence, could have discovered the injury. Lopez v. Swyer, 62 N.J. 267 (1973); see also Southern Cross, 181 F.3d at 425. "[W]hen the gist of the action is fraud concealed from the plaintiff, the statute begins to run on discovery of the wrong or *of facts that reasonably should lead the plaintiff to inquire* into the fraud." Southern Cross, 181 F.3d at 425 (emphasis added).

The alleged claims sounding in fraud or negligent misrepresentation accrued on October 27, 2006, *i.e.*, the date it closed title with Cognis Corporation. See FAC, ¶¶19-22, 24. Moreover, Plaintiff's own allegations demonstrate that it knew or should have known of its purported injury at least as early as April 2008.  In the context of environmental contamination, knowledge of the full extent of the contamination is not necessary to have knowledge of the injury for purposes of the discovery rule. Morristown Assocs. v. Grant Oil Co., 432 N.J. Super. 287, 300-01 (App. Div. 2013), rev'd on other grounds, 106 A.3d 1176 (N.J. 2015); Estate of Maglione v. Gulf Oil Corp., No. A-0105-05T2, 2007 N.J. Super. Unpub. LEXIS 1059, *21 (App. Div. Feb. 22, 2007). A plaintiff's lack of knowledge of the full extent of the contamination "suggests a lack of diligence in attending to the property." Id.; cf. New W. Urban Renewal Co. v. Viacom, Inc., 230 F. Supp. 2d 568, 572-73 (D.N.J. 2002)

(rejecting argument that sampling results are required for actual knowledge of contamination).  See FAC, ¶26.

Plaintiff actually incurred its alleged damage on the day it acquired the Property, October 27, 2006. To the extent any discovery rule applies, the six-year statute of limitations began to run at least as of April 2008 when Plaintiff "received from Cognis Corporation a copy of a letter dated April 8, 2008," which indicated that additional soil remediation was required at the Property. See FAC, ¶26.  As Plaintiff admits, "This was the first time Russo was advised that soil remediation was not fully completed at the Main Parcel." Id. Thus, Plaintiff knew the soil remediation was not fully completed as of April of 2008. Thus, Counts One and Two accrued no later than April 2008. This renders the October 31, 2014 filing of the initial complaint in this action untimely.

**B. Plaintiff Has Failed to Allege Facts Sufficient to Establish Claims of Fraud or Negligent Misrepresentation**

Even assuming that Plaintiff's could maintain a fraud or negligent misrepresentation claim despite the running of the statute of limitations, Counts One and Two substantively fail as a matter of law.

**1. Plaintiff Has Failed To Allege Fraudulent Misrepresentation on the Part of Henkel KGaA**

Plaintiff's fraud claim against Henkel KGaA lacks any factual allegations that could in any way establish any

intention on the part of Henkel KGaA that Plaintiff rely on any alleged statements regarding soil remediation at the Property prior to Plaintiff closing title with Cognis Corporation. The reason for this is simple. The only misrepresentation Plaintiff alleges Henkel KGaA made (1) was made to other parties unrelated to Plaintiff and (2) in connection with a different sale of the Property *over three and a half years before* Plaintiff entered into its Sale Agreement with Cognis Corporation.

Under New Jersey Law, to assert a cause of action based in fraud, a plaintiff must allege with particularity facts demonstrating the following elements:

> (1) A material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.

Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005); Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997) (citing Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 624-250 (1981)); see also In re Suprema Specialties, Inc., 438 F.3d 256 (3d Cir. 2006). In some circumstances, plaintiffs can assert fraud "when he or she heard a statement not from the party that defrauded him or her but from that party's agent or from someone to whom the party communicated the false statement with the intention that the victim hear it, rely on it, and act to his or

her detriment." Kaufman v. I-Stat Corp., 165 N.J. 94, 108 (2000); see also Judson v. Peoples Bank & Trust Co., 25 N.J. 17, 27 (1957). However, "[r]epresentations made to someone other than the plaintiff without a showing of intent that plaintiff should rely upon them, however false, are not actionable in fraud." Metric Invest., Inc. v. Patterson, 98 N.J. Super. 130, 132 (Law Div. 1967). See, e.g., in Wilson v. McCann, No. A-0520-13T1, 2014 N.J. Super., Unpub. LEXIS 2500 (App. Div. Oct. 21, 2014), rejecting indirect reliance argument where the defendant made representations to a contractor regarding the location of a well supplying potable water to the home, which was incorporated into a survey on which the plaintiff relied when purchasing the home).

The entirety of Plaintiff's fraud claim against Henkel KGaA is based on a single representation appearing in the Notarial Deed regarding the status of soil remediation at the Property. Plaintiff was neither a party to the Notarial Deed, nor a relevant party to the transaction at that time. See FAC, ¶15. It is undeniable that Plaintiff was not a party to the Notarial Deed which was made solely in connection with the sale of the Property to Cognis Corporation three and a half years before Plaintiff entered into a contract to purchase the Property. See FAC, ¶¶15, 17. Plaintiff has failed to allege facts sufficient to establish that Henkel KGaA could have possibly intended that

*Plaintiff* rely on any alleged misrepresentation Henkel KGaA made to other parties in a transaction wholly unrelated and over three and a half years prior to Plaintiff's purchase of the Property from Cognis Corporation.

### 2. Plaintiff Has Failed To Allege a Negligent Misrepresentation Claim

Plaintiff's negligent misrepresentation cause of action similarly fails as a matter of law because Plaintiff has not alleged facts sufficient to demonstrate any misrepresentation made by Henkel KGaA to Plaintiff on which it reasonably relied. Moreover, given the lack of direct relationship between Plaintiff and Henkel KGaA, Plaintiff has not and cannot identify any duty Henkel KGaA owed to Plaintiff that was breached in connection with Plaintiff's purchase of the Property from Cognis Corporation.

Negligent misrepresentation is defined as "an incorrect statement, negligently made and justifiably relied upon, [and] may be the basis for recovery of damages for economic loss … sustained as a consequence of that reliance." Green v. Morgan Props., 215 N.J. 431, 457 (2013) (quoting H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334 (1983), superseded on other grounds, N.J.S.A. 2A:53A-25). The elements of a fraud claim and a negligent misrepresentation claim are the same except that negligent misrepresentation does not require scienter as an

element. Kaufman, 165 N.J. at 109-10. The specific elements of the claim have been described as follows:

> (1)  The  defendant  negligently  provided  false information; (2) the plaintiff was a reasonably foreseeable  recipient  of  that  information;  (3) the  plaintiff  justifiably  relied  on  the information;  and  (4)  the  false  statements  were  a proximate cause of plaintiff's damages.

Bonnieview Homeowners Ass'n, LLC v. Woodmont Builders, LLC, 655 F. Supp. 2d 473, 517-18 (D.N.J. 2009); see also Karu v. Feldman, 119 N.J. 135, 146-47 (1990).

First, Plaintiff has failed to identify a single misrepresentation actually made by Henkel KGaA to Plaintiff. The only alleged misrepresentation regarding soil remediation progress appears in the Notarial Deed, as to which Plaintiff is not a party. See FAC, ¶15. Thus, because Plaintiff's negligent misrepresentation claim is based on the same set of facts alleged in support of its fraud claim, the negligent misrepresentation fails as a matter of law. See Wilson, 2014 N.J. Super. Unpub. LEXIS 2500, at *13 ("Liability for negligent misrepresentation [is limited] to those persons for whose benefit and guidance this statement was made with knowledge that the recipient will rely on it.")

Finally, Plaintiff has failed to identify any duty Henkel KGaA owes to Plaintiff to ensure that any representations regarding the soil remediation progress are accurate. Given the

lack of a direct relationship between Henkel KGaA and Plaintiff, Plaintiff cannot establish the requisite duty of care that would require Henkel KGaA to have disclosed the status of soil remediation or otherwise correct some other party's representations. See Gaelick v. Conn. Gen. Life Ins. Co., No. 11-2464, 2011 U.S. Dist. LEXIS 95254, at *14 (D.N.J. Aug. 25, 2011) (noting in the context of the negligent misrepresentation claim that determination of whether duty of care exists between the parties requires an analysis of "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution").

### 3.   Plaintiff's Group Pleading Is Improper Under Fed. R. Civ. P. 9(b)

Plaintiff cannot base its fraud or negligent misrepresentation claims on disclosure of the Notarial Deed and semi-annual DEP report prior to its purchase of the Property.

As a preliminary matter, it would be manifestly inappropriate to impart liability on a party for statements contained in documents in its possession, which are provided to a third-party years after they were prepared. Plaintiff points to no authority for this untenable proposition, and we are aware of none. The slippery slope this creates would work to provide anyone with a cause of action who happens to review another

party's documentation, which contains inaccuracies made for a
wholly separate purpose and at another point in time.

Moreover, even if this disclosure could somehow be deemed a
"representation," Plaintiff's pleading falls far short of the
requisite specificity required to establish a claim of fraud or
negligent misrepresentation based on such a "representation."
Fed. R. Civ. P. 9(b) requires that plaintiffs "state with
particularity the circumstances constituting fraud or mistake."
Failure to comply with this heightened pleading standard
subjects a complaint to dismissal, independent of the factors
applied in a Rule 12(b)(6) motion. In re Rockefeller Center
Properties, Inc. Sec. Lit., 311 F.3d 198, 224 (3d Cir. 2002); In
re Exxon Mobile Corp. Sec. Lit., 387 F. Supp. 2d 407, 417
(D.N.J. 2005).

Plaintiffs satisfy this requirement by pleading the "date,
place or time of the fraud," or through "alternative means of
injecting precision and some measure of substantiation into
their allegations of fraud." Seville Indus. Mach. Corp. v.
Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). A
plaintiff must also allege "who made a representation to whom
and the general content of the misrepresentation." Lum v. Bank
of America, 361 F.3d 217, 224 (3d Cir. 2004) (citing Saporito v.
Combustion Eng'g, Inc., 843 F.2d 666, 675 (3d Cir. 1988),
vacated on other grounds, 489 U.S. 1049 (1989)); Rolo v. City

- 35 -

*Investing Co. Liquidating Trust*, 155 F.3d 644, 658-59 (3d Cir. 1998).

The practice of aggregating individual defendants for purposes of asserting fraud claims ("group pleading") is improper and inadequate under Fed. R. Civ. P. 9(b). *Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494 (D.N.J. 1999); *Seville*, 742 F.2d at 791 (3d Cir. 1984). Here, Plaintiff improperly "group pleads," failing to particularly attribute this disclosure to any specific defendant in this action. See FAC, ¶20. Plaintiff attributes the alleged disclosure of the Notarial Deed and semi-annual reports to *all defendants*. See FAC ¶¶ 18-20. This group fails to meet the particularity requirements of Fed. R. Civ. P. 9(b).

### C. **Plaintiff's Breach of Contract Claim Should Be Dismissed**

Plaintiff's Fourth Count for breach of contract asserts generally that Henkel KGaA violated its obligations under the following agreements: (a) the Notarial Deed, (b) the Sale Agreement, (c) the Cognis Corporation-Plaintiff Access Agreement, and (d) the Plaintiff-Henkel Corp. Access Agreement. See FAC, ¶56. There is no privity of contract between Plaintiff and Henkel KGaA in connection with any of these agreements.

Privity of contract is necessary for any plaintiff to assert a breach of contract claim against such defendant — *i.e.*, they must be parties to the same agreement or otherwise the

plaintiff must be a third-party beneficiary. <u>Gherardi v. Board of Education</u>, 53 N.J. Super. 349, 360 (App. Div. 1958). "A party cannot enforce provisions of a contract to which he is not a privy, unless it is clear that the parties to the contract intended to confer upon him the right to enforce it." <u>First Nat'l State Bank of N.J. v. Carlyle House, Inc.</u>, 102 N.J. Super. 300, 322 (Chan. Div. 1968), <u>aff'd</u> <u>o.b.</u>, 107 N.J. Super. 389 (App. Div. 1969), <u>certif.</u> <u>denied</u>, 55 N.J. 316 (1970).

Here, there is no privity of contract between Plaintiff and Henkel KGaA with respect to any of the alleged agreements, which form the bases of Plaintiff's breach of contract claim. Accordingly, Plaintiff's breach of contract claim should be dismissed.

**D. Plaintiff's Common Law is Preempted by DEP Authority**

Plaintiff asserts a cause of action in Count Five against Henkel KGaA under common law that improperly seeks to directly interfere with the DEP's management and control over the Property's remediation. Plaintiff's Fifth Count is based on an alleged common law cause of action for "abnormally dangerous" activity as defined and established by <u>Biniek v. Exxon Mobil Corp.</u>, 358 N.J. Super. 587, 598 (Law Div. 2002); <u>see</u> <u>also</u> <u>T&E Indus. v. Safety Light Corp.</u>, 123 N.J. 371, 386-87 (1991). This is the exact type of cause of action that must be preempted by the authority granted the DEP under the expansive New Jersey

environmental protection statutes and regulations. Count Five should therefore be dismissed to avoid unnecessary interference with the DEP's preemptive authority over the management of remediation at the site.

Pursuant to the abnormally-dangerous-activity doctrine, "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm." T&E Indus., 123 N.J. at 390 (quoting Restatement (Second) of Torts, § 519). The theory behind the doctrine is that liability should fall "on those who, for their own benefit, introduce an extraordinary risk of harm into the community" despite the social utility of the activity itself. Id. at 386-87.

Here, this common law cause of action interferes with and usurps control over a remediation, and is therefore preempted by the pending DEP controlled remediation. A private right of action under the Environmental Rights Act ("ERA") is only permitted when the DEP has failed and neglected to act in the best interests of the citizenry or has arbitrarily, capriciously or unreasonably acted with respect to any environmental cleanup. See Howell Township v. Waste Disposal, Inc., 207 N.J. Super. 80, 96 (App. Div. 1986); Player v. Motiva Enters. LLC, 2006 U.S. Dist. LEXIS 2288, at *45 (D.N.J. Jan. 20, 2006). "[T]he

legislature has entrusted to the DEP primary and supervisory enforcement powers under the various environmental protection legislation," and the DEP must be free to exercise its discretion broadly and in an unfettered manner. Howell, 207 N.J. Super. at 94-96. Thus, the DEP has preemptive jurisdiction over any private claimant rights under the ERA, absent a showing that the DEP has in some way failed in its duties. See Superior Air Prod. Co. v. NL Indus., Inc., 216 N.J. Super. 46, 61 (App. Div. 1987). The same logic should apply to common law claims such as Count Five. Permitting Plaintiff to proceed with this claim would work to undermine and interfere with the ongoing remediation at the Property, as well as the DEP's management and regulatory control thereof. Count Five clearly seeks redress for the contamination itself and declaratory judgment directly implicating management of the remediation. See FAC, ¶¶61-64, p.36. In light of this, we ask this Court to hold, as a matter of first impression, that Plaintiff's common law cause of action in Count Five be dismissed as preempted by the ERA and DEP's authority thereunder.

### CONCLUSION

Henkel KGaA respectfully requests that the First Amended Complaint be dismissed with prejudice for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Alternatively, this Court should stay the pending action and

compel Plaintiff to submit this dispute to arbitration pursuant to the Arbitration Agreement. Otherwise, the Court should dismiss the action in its entirety for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

<div style="margin-left: 40%;">

GIORDANO, HALLERAN & CIESLA, P.C.
Attorneys for Defendant Henkel AG
& Co. KGaA.


By:_____
    PAUL H. SCHNEIDER, ESQ.
    CHRISTOPHER J. MARINO, ESQ.
</div>

Dated: April 14, 2015

Docs #1883502-v3